UNITED STATES DISTRICT COURT
WESTERN DISTRICT OFNORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00328-RJC-DSC

| | |
|---|---|
| AMBROSE CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| FEDEX FREIGHT, INC., ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment, (Doc. No. 56); its Memorandum in Support, (Doc. No. 57); Plaintiff's Amended Response in Opposition, (Doc. No. 59); and Defendant's Reply, (Doc. No. 62). For the reasons set forth below, the Court will **GRANT** Defendant's Motion for Summary Judgment.

Also pending before the Court is Defendant's Motion to Strike, (Doc. No. 60), and Plaintiff's Response to that motion, (Doc. No. 63). For the reasons set forth below, the Court will **DENY** Defendant's Motion to Strike.

1

I.  PROCEDURAL BACKGROUND

Plaintiff Ambrose Clark ("Plaintiff") was employed by FedEx Freight, Inc., ("Defendant") from on or about April 2004 to December 10, 2015. (Doc. No. 41: Amended Complaint ¶1). On May 2, 2016, Plaintiff filed a charge of discrimination with the EEOC, which thereafter issued a "right to sue" letter on March 16, 2017. (Doc. No. 1: Complaint at 10, 22). Plaintiff, pro se, filed a Complaint on June 16, 2017, asserting claims of wrongful termination, harassment, and conspiracy based on race under Title VII of the Civil Rights Act of 1964, as amended. (Doc. No. 1 at 1-2). With leave of Court, Defendant filed an Amended Complaint through counsel on October 16, 2018, incorporating the original allegations and adding claims of negligent training, negligent retention and supervision, negligent infliction of emotional distress, intentional infliction of emotional distress, and negligence under North Carolina law. (Doc. No. 36: Order; Doc. No. 41: Amended Complaint). On December 4, 2019, Defendant filed the instant Motion for Summary Judgment, (Doc. No. 56), which is ripe for adjudication.

II.  LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the

"initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50.

3

III. DISCUSSION

    A. Federal Law Claim

        1. Timeliness and scope of EEOC charge

Title VII requires that a plaintiff first exhaust administrative remedies before filing a federal lawsuit. Hentosh v. Old Dominion University, 767 F.3d 413, 416 (4th Cir. 2014); Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009); 42 U.S.C.A. § 2000e-5(f)(1). Generally, a discrimination charge must be filed with the EEOC within 180 days of the alleged unlawful employment practice. Hentosh, 767 F.3d at 417; Jones, 551 F.3d at 300; 42 U.S.C. § 2000(e)-5(e)(1). The exhaustion requirement serves the purposes of putting the employer on notice of the alleged violations, promoting timely resolution of claims, and allowing the EEOC to use administrative conciliation as the primary means of handling claims. Sydnor v. Fairfax County, Virginia, 681 F.3d 591, 593 (4th Cir. 2012). Thus, the EEOC discrimination charge determines the scope of a plaintiff's right to file suit in federal court. Sydnor, 681 F.3d at 593; Jones, 551 F.3d at 300. However, a "timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Hentosh, 767 F.3d at 417.

Here, Defendant asserts a statute-of-limitations defense against any claim arising prior to October 31, 2015, based on the date of the EEOC charge. (Doc. No. 57: Memorandum at 9, 11). That charge, filed May 2, 2016, included allegations of

4

"disparate and discriminatory treatment based on [his] race" during his tenure with Defendant, including being denied training necessary for advancement, overlooked for promotion, and terminated based on false allegations. (Doc. No. 1 at 22). Although the date range listed for the alleged discrimination is December 2014 to December 10, 2015, (Id.), Plaintiff did not identify any alleged act of discrimination, other than his termination, as occurring within 180 days of filing the EEOC charge. (Doc. No. 1 at 107-110, Rebuttal to Defendant's Statement to EEOC).

In response to Defendant's statute-of-limitations defense, Plaintiff admits that his "Title VII claim is not based on any single incident that occurred prior to December 9, 2015," but rather asserts that alleged prior discriminatory conduct "merely provides direct and circumstantial evidence to show Defendant's adverse employment decision on December 9, 2015 was pretextual." (Doc. No. 59: Response at 15). The Court will accordingly confine the scope of Plaintiff's claim to his alleged wrongful termination.

    2.    Direct evidence of discrimination[1]

Plaintiff argues that his claim is not subject to the familiar McDonnell Douglas burden-shifting test because of direct evidence of discrimination by Defendant. (Doc. No. 59: Response at 15-16). Citing Metoyer v. Chassman, 504 F.3d 919, 933-34 (9th Cir. 2007), Plaintiff argues that two acts taken by Defendant show that race was a contributing factor to his termination. (Id. at 16). First, he points to

---

[1] For purposes of the instant motion, the Court views factual allegations and resulting inferences in light most favorable to Plaintiff.

an incident in 2013 where a noose was found in a truck in Plaintiff's area of supervision, but, to his knowledge, Employee Relations Advisor Daryl Moore did nothing about it. (Id.; Doc. No. 58-2: Clark Dep. at 113[2]). Second, he points to Operations Supervisor Steve Fowler's use of the word "nigger" to refer to an African-American employee who punctured a drum of hazardous material and did not report it. (Doc. No. 59: Response at 17; Doc. No. 58-5: Branish Dep. at 76-77, 86, 94).

"Direct evidence must be evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006) (internal quotation marks and citation omitted). Any use of this perjorative word is regpugnant. However, it is undisputed that the decision to terminate Plaintiff was made by Charles Pullen, after review by Senior Legal Counsel Brad Crawford, on the recommendation of Terminal Manager Bill Agnew and District Operations Managing Director Thomas Putnam. (Doc. No. 1 at 47-49; Doc. No. 57-10: Agnew Aff. ¶9). Plaintiff has not offered any evidence of discriminatory conduct by any of those persons.[3] Thus, his reliance on Metoyer is misplaced because in

---

[2] For consistency, the Court will reference page numbers as generated by CM/ECF, rather than those within particular documents and transcripts.

[3] Plaintiff testified that he never heard Agnew make any racially insensitive statements. (Doc. No. 58-2: Clark Dep. at 190). Charles Branish recorded Agnew making comments about an employee using FMLA benefits and referring to others as "turds." Branish did not attribute the comments to the race of the people involved. (Doc. No. 58-5: Branish Dep. at 41-42, 72-73, 85-86, 96).

that case the evidence showed that remarks by decision-making senior management members suggested the existence of racial bias. 504 F.3d at 934. Plaintiff has failed to establish a genuine dispute on his claim of direct evidence of discrimination because he has not shown the proffered discriminatory acts had any nexus to the decision to terminate him. Warch, 435 F.3d at 520-21.

3. Plaintiff's Prima Facie Discrimination Claim

In the absence of direct evidence, a discriminatory discharge claim uses the McDonnell Douglas framework, under which

> the plaintiff-employee must first prove a prima facie case of discrimination by a preponderance of the evidence. If she succeeds, the defendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the prima facie case "drops out of the picture" and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination.

Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996). To establish a prima facie discrimination claim, Plaintiff must show that:

> (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). For purposes of resolving the instant motion, the Court will assume, without deciding, that Plaintiff has established a prima facie case of discrimination.

### a) Defendant's legitimate, non-discriminatory reasoning

Defendant's proffered legitimate, nondiscriminatory reasoning is straightforward: "Plaintiff was terminated after several employees substantiated the allegation that Plaintiff made extremely inappropriate and disparaging comments about Mr. Ruff, an employee under his supervision, and Mr. Ruff's perceived sexual orientation." (Doc. No. 57 at 12).

An email attached to Plaintiff's Complaint documents that Bill Agnew initiated an harassment investigation of Plaintiff on November 17, 2015, after Ruff reported Plaintiff was treating him "different" and "picking on him because in September he had gone on a cruise with 3 friends—one of whom was homosexual." (Doc. No. 1 at 51). Daryl Moore conducted the investigation, in which Raymont Jones, Ray Rucker, David Nichols, and Robert Fewell reported hearing Plaintiff make comments about Ruff's sexual orientation.[4] (Doc. No. 1 at 59, 60, 64, 72). Taj Dahbi and Mario Maxwell related comments Plaintiff made to them about their sexual orientation. (Id. at 70, 74). Moore summarized the investigation in a Corrective Action Recap, which included recommendations from Agnew and Putnam to terminate Plaintiff "for violations of the Conduct of Employee Policy." (Id. at 46-47). After Crawford reviewed the Recap for termination, Pullen directed Moore to "proceed with the separation process." (Id. at 48).

---

[4] Other employees, including those implicated in the disparaging conversations with Plaintiff, reported no knowledge about the issue. (Doc. No. 1 at 67, 80, 82).

8

Plaintiff denied making any comments and appealed his termination within the company on the basis that Ruff "made up his allegations after I addressed him for stealing time." (Id. at 53, 84). Plaintiff attacks the credibility of the witnesses who implicated him. (Doc. No. 59 at 19-20). However, it is not the role of the Court to weigh the prudence or correctness of the employment decision where, as here, there is sufficient evidence to establish a legitimate, non-discriminatory reason for termination. Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 901 (4th Cir. 2017) (focusing inquiry on "facts the decision-maker actually perceived").

        b)        Plaintiff's pretext argument

Next, Plaintiff has the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000). He argues that Matthew Frazier, a Caucasian employee, was terminated after at least eight instances of racially insensitive language and that other supervisors routinely cursed in violation of posted "do's and don'ts" where he, an African-American employee, was terminated with no prior history of being reprimanded for inappropriate commentary. (Doc. No. 59 at 23-24). He also points to acts of "racial hostility, intolerance, harassment, and disparate treatment," see supra III.A.1., to meet his burden of proving a genuine issue of material fact regarding discrimination. (Doc. No. 59 at 25).

"'[E]specially relevant' to a showing of pretext would be evidence that other employees who were similarly situated to the plaintiff (but for the protected

9

characteristic) were treated more favorably." Laing v. Federal Exp. Corp., 703 F.3d 713, 719 (4th Cir. 2013) (quoting McDonnell Douglas, 411 U.S. at 804)). Here, the Caucasian employee offered for comparison was a dock associate, (Doc. No. 58-3, Rucker Dep. at 30), where Plaintiff was an Operations Supervisor found to have "engage[d] in inappropriate conduct with subordinates," (Doc. No. 1 at 46). Thus, Plaintiff has not established a genuine issue that they were similarly situated. Additionally, the company's investigation showed that Plaintiff was not terminated after a single remark, but after a series of comments about Ruff's sexual orientation beginning in September 2015 in the break room, when Ruff, Maxwell, Dahbi, and Stegal were on the cruise. (Doc. No. 58-3, Rucker Dep. at 59-60; Doc. No. 1 at 64, Nichols Statement, Doc. No. 1 at 72, Fewell Statement). Such conversations continued "on different occasions" and "a lot of nights," (Doc. No. 1 at 60, Rucker Statement; see also Doc. No. 1 at 64, Nichols Statement ("After [break room] incident, there was [sic] discussions of a picture of Ruff on the cruise … dressed like a fairy."). Plaintiff questioned Dahbi when they returned about the "gay cruise." (Doc. No. 1 at 70, Dahbi Statement). Additionally, he made comments to Maxwell about his sexual orientation earlier in the summer. (Doc. No. 1 at 74).

Plaintiff's comparison to supervisors who used profanity, but were not terminated, also fails to create a genuine issue that his termination for violating company policy was pretextual. Rucker testified that supervisors Paul Kaminski and James Brown used profanity in conversation, although a sign on the wall said, "No

swearing, no cussing, no profanity."[5] (Doc. No. 58-3, Rucker Dep at 28). The information reported to Moore regarding Plaintiff's conversations with dock workers included: Plaintiff showing pictures of Ruff and saying "this ain't nothing but gay," (Doc. No. 1 at 59, Jones Statement; see also Doc. No. 1 at 72, Fewell Statement (Plaintiff said "Dontavis is gay" when shown picture from Ruff's Instagram account); Plaintiff and Zavious Padget saying "Mr. Maxwell was going to screw Mr. Ruff up his ass," (Doc. No. 1 at 60, Rucker Statement); and Plaintiff and Padget talking about Ruff and Maxwell sharing a room on a "gay cruise," (Doc. No. 1 at 64).

Moore detailed in the Corrective Active Recap the portions of the company's Conduct of Employee Policy violated by Plaintiff's actions as:

> Other conduct that will not be tolerated include, but are not limited to, the following examples:
> - Disruptive conduct while on duty or while on Company property
> - Any other act obviously and significantly detrimental to the best interest of FedEx as determined by management
> - Openly making or publishing false, vicious, or malicious statements concerning the Company and/or any employee
> - Other misconduct (e.g. job-related, sexual, hostile)
> - Improper or disorderly conduct with a customer
> - Leadership failure of a member of management
> - All employees are also expected to comply with the Company's Social Media Guidelines

(Doc. No. 1 at 46). When this Court weighs Plaintiff's alleged conversations with subordinates involving disparaging remarks about Ruff's and others' purported sexual orientation against the use of profanity by other supervisors, it easily finds that they are not sufficiently comparable to carry Plaintiff's burden to show a genuine

---

[5] Rucker also testified that he never heard a supervisor make comments related to race. (Doc. No. 58-3, Rucker Dep at 28).

11

issue that Defendant used the violation of company policy as a pretext for racial discrimination.

Finally, as detailed above, Plaintiff has failed to present any evidence that the upper-level managers who recommended and decided his termination were responsible for any of the discriminatory acts he described during his tenure at the company. It is notable that Agnew both approved Plaintiff's promotion in February 2015, (Doc. No. 57-2, Moore Aff. ¶12), and recommended his termination 10 months later, (Doc. No. 1 at 46); thus, "a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991). It is also notable that Plaintiff informed EEOC Investigator Debbie Smith that he never had any problems with his work or any misunderstandings with employees until he confronted Ruff about taking extended breaks; after that Ruff and others plotted against him because Ruff thought Plaintiff was going "to write him up." (Doc. No. 1 at 28). Accordingly, Plaintiff has not shown any genuine issue of material fact that Defendant's legitimate reason for termination was pretext for racial discrimination.

B. State Law Claims

1. Counts One and Two

Counts One and Two of the Amended Complaint, filed October 16, 2018, allege that Defendant negligently failed to train and supervise its employees resulting in intentional racial harassment by non-minority managers and a hostile work environment. (Doc. No. 41 at 6-8). Defendant asserts a statute of limitations defense

to any conduct prior to October 17, 2015, pursuant to N.C.G.S. § 1-52(16). (Doc. No. 57 at 20). Plaintiff does not dispute that a three-year statue of limitations applies, but asserts the Amended Complaint relates back to the original Complaint filed on June 16, 2017. (Doc. No. 59 at 26). Even so, neither the Amended Complaint nor the amended Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Response") alleges an intentional act of discrimination that Defendant negligently allowed to occur during the limitations period, other than Plaintiff's termination. (Doc. No. 41: Amended Complaint at 2-5; Doc. No. 59: Response at 1-11).

For example, not being allowed to wear a Yankees hat when other employees were allowed to wear NASCAR hats, James Brown's treating him "wrong," Caucasians obtaining full-time status faster than African-Americans, and preferential training for Caucasians all occurred when Plaintiff was a part-time employee, in 2006 or before. (Doc. No. 58-2, Clark Dep. at 107-108, 114-115, 116-117, 182). He provided no date for Paul Kaminski's comment about getting "rid of the brother with dreds," for not allowing Jordan sneakers, and firing black drivers for DWIs where white drivers were put on the dock. (Id. at 119, 181). Matthew Frazier was terminated for racial remarks in 2013. (Doc. No. 58-3, Rucker Dep. at 30-31). The noose was found in 2013. (Doc. No. 59: Response at 6). Other than that incident, Plaintiff has not shown that he ever reported mistreatment to the company to be redressed.

Other conduct relied upon by Plaintiff occurred after he was terminated. Charles Branish's recordings were made in 2017. (Doc. No. 58-5, Branish Dep. at 23).

13

Likewise, the write-up situation Branish described comparing Paul Pigere and Littrell Yearwood occurred in 2017. (Id. at 48). Branish complained to Moore about Paul Kominski's mistreatment in 2017, but he provided no date for Mike Nixon telling Hispanic employees not to speak Spanish or Steve Fowler's use of the word "nigger." (Id. at 46, 76-78). Accordingly, Plaintiff's claims in Counts One and Two alleging Defendant was negligent in training and supervising its employees not to engage in intentional discrimination are time-barred.

2. Counts Three, Four, and Five

Counts Three, Four, and Five of the Amended Complaint allege that Defendant injured Plaintiff when it terminated him based on race in violation of Title VII. (Doc. No. 41 at 8-10). As detailed above, Plaintiff has not shown any genuine issue of material fact that his termination was based on racial discrimination; therefore, his claims for resulting injury likewise fail.

C. Motion to Strike

Local Rule 7.1(d) limits "any brief" to 25 pages. Without leave, Plaintiff's initial Response, (Doc. No. 28), to Defendant's Motion for Summary Judgment was comprised of 30 pages, not including the certificate of service. When alerted to the error by counsel for Defendant, Plaintiff filed a 28-page Amended Response, (Doc. No. 59), not including the certificate of service. Defendant seeks enforcement of the local rule by striking the excess pages and recouping attorney's fees necessary to seek that relief. (Doc. No. 60: Motion).

While the Court does not condone Plaintiff's ignoring the local rule, even when brought to his attention, the Court will excuse the error in the circumstances of this case. Plaintiff set out a lengthy, detailed statement of facts spanning his 13 years at the company in an attempt to meet his burden to show a genuine issue of material fact. (Doc. No. 59: Response at 1-12). The offending pages contained brief defenses of his state law claims and a simple conclusion. (Id. at 26-28). Defendant replied cogently and completely in 10 pages. (Doc. No. 62). Accordingly, the Court finds that Defendant was not prejudiced by Plaintiff's violation and declines to exercise its discretion to strike the excess pages or award attorney's fees.

IV. CONCLUSION

**IT IS, THEREFORE, ORDERED THAT:**

1. Defendant's Motion for Summary Judgment, (Doc. No. 56), is **GRANTED**, and Plaintiff's claims in the Complaint, (Doc. No. 1), and Amended Complaint, (Doc. No. 41), are **DISMISSED** in their entirety; and,

2. Defendant's Motion to Strike, (Doc. No. 60), is **DENIED**.

    The Clerk of Court is directed to close this case.

Signed: March 16, 2020

Robert J. Conrad, Jr.
United States District Judge